UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA A. MUMMY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. EDCV 06-776 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On July 26, 2007, plaintiff Debra A. Mummy ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 31, 2006 Case Management Order, ¶ 5.

---

[1] Michael J. Astrue is substituted as Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d)(1).

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") regarding the consultative psychiatric examiner's opinion, the marriage and family therapist's opinion, the hypothetical question to the vocational expert, and plaintiff's past relevant work are supported by substantial evidence and are free from material error.[2]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about May 10, 2004, plaintiff protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. (Administrative Record ("AR") 11, 46-48, 207, 208-12). Plaintiff asserted that she became disabled on April 23, 2004, due to depression and spinal cord injury. (AR 76-77). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on January 9, 2006. (AR 214-44).

On April 28, 2006, the ALJ determined that plaintiff was not disabled at any time through the date of the ALJ's decision. (AR 11-15). Specifically, the ALJ found: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date (AR 14); (2) plaintiff suffered from the following severe impairments: lumbar spine disorder, status post surgery; and cervical spondylosis[3] (AR 12, 14); (3) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 12, 14); (4) plaintiff retained the residual functional capacity to perform a significant range of light

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[3]The ALJ determined that plaintiff's depression did not constitute a severe impairment. (AR 12).

work (AR 14);[4] and (5) plaintiff was able to perform her past relevant work as a preparation cook, cashier, camp host, and grocery cashier. (AR 14).

The Appeals Council denied review on June 16, 2006, and the ALJ's decision became the final decision of the Commissioner. (AR 5-7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///
///

---

[4]The ALJ indicated: (1) plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; (2) plaintiff could sit, stand and/or walk six hours out of an eight-hour period; (3) plaintiff could perform work requiring occasional climbing of ramps/stairs, balancing, stooping, crouching, kneeling, or squatting; (4) plaintiff was precluded from work requiring crawling and climbing ladders, scaffolds, and ropes; (5) plaintiff was limited to work permitting only a limited range of motion of her neck defined as flexion to no greater than sixty percent, extension two-thirds, and rotation up to three-quarters bilaterally; and (6) plaintiff was limited to work requiring no greater than frequent handling or fine fingering. (AR 14).

|   |   |   |
|---|---|---|
| | (2) | Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three. |
| | (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four. |
| | (4) | Does the claimant possess the residual functional capacity to perform her past relevant work?[5]  If so, the claimant is not disabled.  If not, proceed to step five. |
| | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity,

---

[5]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

4

age, education, and work experience.[6] <u>Tackett</u>, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>). When a claimant suffers only exertional (strength-related) limitations, the ALJ must consult the Grids. <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1115 (9th Cir.), <u>as amended</u> (2006). When a claimant suffers only non-exertional limitations, the Grids are inappropriate and the ALJ must rely on other evidence. <u>Id.</u> When a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations. <u>See</u> <u>Lounsburry</u>, 468 F.3d at 1116; <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 (9th Cir. 1989). If so, the claimant must be awarded benefits. <u>Cooper</u>, 880 F.2d at 1155. If not, and if the claimant suffers from significant and sufficiently severe non-exertional limitations, not accounted for in the Grids, the ALJ must take the testimony of a vocational expert.[7] <u>Hoopai v. Astrue</u>, 2007 WL 2410178 *3-4 (9th Cir. August 27, 2007).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately

---

[6]Whether there are a "significant" number of jobs a claimant is able to perform with her limitations is a question of fact to be determined by a judicial officer. <u>Martinez v. Heckler</u>, 807 F.2d 771, 775 (9th Cir. 1986). <u>See also</u> <u>Barker v. Secretary of Health & Human Services</u>, 882 F.2d 1474, 1478 (9th Cir.), <u>as amended</u> (1989) (noting that Ninth Circuit has never established the minimum number of jobs necessary to constitute a "significant number").

[7]An ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to the make the Grids inapplicable to the particular case. <u>Hoopai v. Astrue</u>, 2007 WL 2410178 *4 (9th Cir. August 27, 2007). The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two. <u>Id.</u>

describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information).  The DOT is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).[8]  In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation."  Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435).  Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony.  Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

---

[8]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi, 486 F.3d at 1152 n.6.

6

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Parra, 481 F.3d at 746; Robbins, 466 F.3d at 882.

**IV.    DISCUSSION**

**A.    The ALJ Did Not Fail Properly to Develop the Record with Regard to the Consultative Examiner's Opinion**

Plaintiff argues that the ALJ failed properly to develop the record by re-contacting Dr. Stephen Simonian, the consultative psychiatric examiner, to clarify his assessment of plaintiff's ability to "maintain concentration and attention for a period of time." (Plaintiff's Motion at 2). In particular, plaintiff contends that Dr. Simonian's statement of "period of time" must be defined in order "to understand more precisely the limitation that Dr. Simonian suggested." (Plaintiff's Motion at 3).

7

The ALJ in a social security case has an independent duty fully and fairly to develop the record and to assure that the claimant's interests are considered, even when the claimant is represented, as in this case. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150).

Here, the record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Review of Dr. Simonian's observations and conclusions in context show that his finding that plaintiff had the ability to "maintain concentration and attention for a period of time" was not a suggestion of a limitation. On examination, Dr. Simonian observed the following: plaintiff was alert and oriented times three; plaintiff's psychomotor activity was within normal limits; plaintiff did not show major disorder of speech; plaintiff's thought processes were coherent with no tangentiality or looseness of associations; plaintiff's thought content was intact with no delusional thinking, hallucinations, or suicidal or homicidal ideation; plaintiff's affect was full range; plaintiff was pleasant and cooperative; plaintiff's mood was euthymic; plaintiff was somewhat frustrated and unhappy about her medical condition; plaintiff's intellectual functioning and memory for recent and remote events were intact and within normal limits; plaintiff's ability to comprehend and respond appropriately and relevantly to questions was intact and within normal limits; and plaintiff's judgment was not impaired. (AR 146-47). The mental status examination was unremarkable except for plaintiff's frustration and unhappiness over her medical

condition (i.e., pain in her cervical and lumbar spine).  This fails to support any limitation in plaintiff's ability to maintain concentration and attention.

Furthermore, in addition to Dr. Simonian's finding with regard to plaintiff's ability to maintain concentration and attention, Dr. Simonian assessed that plaintiff was able to:  understand, remember, and carry out simple one to two-step job instructions; understand, remember, and carry out detailed and complex instructions; relate and interact with supervisors, co-workers, and the public; associate with day-to-day work activity, including attendance and safety; adapt to the stresses common to a normal work environment; maintain regular attendance in the work place and perform work activities on a consistent basis; and perform work activities without special or additional supervision.  (AR 147-48).  Such findings fail to suggest that plaintiff had a severe mental limitation in concentration and attention.[9]

---

[9] Dr. Simonian also assessed plaintiff's Global Assessment of Functioning ("GAF") rating at 60, which is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (AR 147); see American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereinafter "DSM IV").  To the extent plaintiff argues that the GAF score supported a finding that plaintiff's ability to maintain concentration and attention was impaired, this argument fails.  First, a GAF rating is not determinative of a mental disability for social security claim purposes.  See 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting the claimant's argument that the ALJ improperly failed to consider her GAF score from her treating physicians in assessing her residual functional capacity, reasoning that "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").  Second, given that the GAF scale has two components (the first part rates symptoms severity, while the second part rates functioning), either of which could be the basis of an assessed GAF score, a GAF of 60 could indicate moderate symptoms without a commensurate deficit in functioning.  See DSM IV at 32.  Third, any implication that a GAF score of 60 may have is minimized by the proximity of that score to the next decile scores of 61 to 70, which are indicative of mild symptoms or some difficulty in functioning but generally functioning pretty well.  DSM IV at 32.  Finally, the consulting board certified psychiatrist determined that plaintiff did not have a severe mental impairment despite noting that plaintiff had a GAF of 60.  (AR 186).  For these reasons, the GAF score did not suggest that Dr. Simonian found a "severe" impairment in plaintiff's ability to maintain concentration and attention.

1       Notably, Dr. H. N. Hurwitz, a consulting board certified psychiatrist, also
2  concluded that plaintiff's mental impairment was not severe. (AR 172, 186). Dr.
3  Hurwitz's opinion was consistent with Dr. Simonian's mental status examination
4  and, therefore, constituted substantial evidence. See Tonapetyan, 242 F.3d at
5  1149 (holding that opinions of non-treating or non-examining doctors may serve
6  as substantial evidence when consistent with independent clinical findings or other
7  evidence in the record). Thus, the ALJ properly relied upon Dr. Hurwitz's opinion
8  in concluding that plaintiff's mental impairment was not severe. (AR 12).
9       The Court must affirm the Commissioner's decision if it is supported by
10 substantial evidence and if the Commissioner applied the correct legal standards.
11 Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). Here, the Court
12 concludes that Dr. Simonian's opinion was not ambiguous, that the evidence was
13 not inadequate to allow for proper evaluation of the evidence, that the ALJ did not
14 fail properly to develop the record, and that substantial evidence supported the
15 ALJ's conclusion that plaintiff did not have a severe mental impairment or any
16 functional limitations resulting from a mental impairment.

         **B.**     **The ALJ's Assessment of the Opinion of the Marriage and Family Therapist Is Free from Material Error**

19      Plaintiff contends that the ALJ erred in discounting marriage and family
20 therapist ("MFT") Carolyn Kean's opinion. (Plaintiff's Motion at 9-10). In
21 particular, plaintiff argues that the ALJ improperly discounted MFT Kean's
22 opinion by reasoning that "nothing in [MFT Kean's] form indicates when
23 treatment first began, how long [plaintiff] has been treated, or even, for that
24 matter, whether the signators have ever treated [plaintiff]." (Plaintiff's Motion at
25 10). Plaintiff asserts that the ALJ should have re-contacted MFT Kean to obtain
26 clarification if the ALJ had concerns over the legitimacy of her opinion.
27 (Plaintiff's Motion at 10).
28 ///

The Commissioner requires evidence from "acceptable medical sources" in order to establish whether a claimant has medically determinable impairments. 20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical sources" include licensed physicians, psychologists, optometrist, and podiatrists, as well as qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). However, the Commissioner may consider observations by "other sources," such as medical sources who are not listed as "acceptable medical sources," to show the severity of the claimant's impairments and how they affect the claimant's ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Opinions from "other sources" may be given less weight than those from "acceptable medical sources." Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996).

On October 26, 2004, MFT Kean completed a "Work Capacity Evaluation (Mental)" form.[10] (AR 205-06). In a check-off list, she assessed that plaintiff would miss at least three days of work each month and would have "marked" limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[11] (AR 205-06).

In discounting MFT Kean's opinion, the ALJ provided the following reasons:

> First, the form report was provided by a mental health care worker and not a psychiatrist or psychologist; thus it is not provided by a qualified and acceptable medical source. Second, despite finding absent or minimal limitation in every domain with the exception of marked limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, it was somehow concluded that [plaintiff] would be anticipated to miss three or more days of work per month. The assessment itself fails to support such a conclusion. Third, although the form is signed in late 2004, nothing in the form indicates

---

[10]The form was co-signed by another MFT, whose name is illegible, on November 2, 2004. (AR 206).

[11]"Marked" is defined as: "Serious limitations in this area. The ability to function in this area is severely limited but not precluded." (AR 205).

11

when treatment first began, how long [Plaintiff] has been treated, or even, for that matter, whether the signators have ever treated [plaintiff]. Fourth, this is a "check-the-box" form unaccompanied by any clinical records explaining how the authors arrived at their conclusions. The form doesn't even contain any diagnosis or prognosis. For these reasons, the exhibit is entitled to very little, if any, weight.

(AR 13).

The stated reason at issue for discounting MFT Kean's opinion – i.e., that "nothing in [MFT Kean's] form indicates when treatment first began, how long [plaintiff] has been treated, or even, for that matter, whether the signators have ever treated [plaintiff]" – may not have been a sufficient reason for discounting MFT Kean's opinion.[12] Notwithstanding this questionable reason for rejection, the ALJ provided other sufficient reasons why MFT Kean's opinion should be discounted.[13]

First and foremost, MFT Kean was not an "acceptable medical source" under the Code of Federal Regulations, but rather deemed an "other source." See 20 C.F.R. §§ 404.1513, 416.913. As such, the ALJ could have accorded MFT Kean's opinion "less weight than opinions from acceptable medical sources" such as Dr. Hurwitz. See Gomez, 74 F.3d at 970-71. In fact, the governing regulations contain "no specific guidelines for the weighing of opinions from other sources." Id. at 970. The ALJ was not required to accept or specifically refute MFT Kean's opinion under the Regulations or Ninth Circuit precedent.

---

[12] Progress notes from SAC Health System suggest that plaintiff may have started treatment with MFT Kean some time after September 20, 2004. (AR 196). Specifically, the progress notes dated September 20, 2004 memorialize MFT Kean's comment that plaintiff "scheduled an appointment with [her] in Behavioral Health." (AR 196). Moreover, plaintiff reported to Dr. Simonian that, as of August 7, 2004, he had never received psychiatrist treatment. (AR 146). Although there is no record from SAC Health System that plaintiff did, in fact, attend her scheduled appointment, the September 20, 2004 progress notes undermine the this stated reason for discounting MFT Kean's opinion.

[13] As noted above, the ALJ adopted the opinion of Dr. Hurwitz, in finding that plaintiff's mental impairment was not severe. (AR 12).

12

Further, the ALJ properly found that MFT Kean's opinion was conclusory and inadequately supported by clinical records. (AR 13); see Magallanes v. Bowen, 881 F.2d 747, 751 (1989) (finding that the ALJ need not consider brief and conclusory opinions); see also Crane, 76 F.3d at 253 (9th Cir. 1996) (holding that the ALJ properly rejected doctors' opinions because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). MFT Kean simply submitted a check-off list, containing her assessment of plaintiff's mental limitations. (AR 205-06). The form did not contain any diagnosis, prognosis, or explanation of the limitation findings. (AR 205-06). Nor did the record from SAC Health System, where plaintiff purportedly received treatment from MFT Kean, evidence any mental health treatment.

For these reasons, the Court concludes that the ALJ properly discounted MFT Kean's opinion and, thus, further development of the record was not required.

### C. The ALJ Posed a Complete Hypothetical Question to the Vocational Expert

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was incomplete because the ALJ failed to include the limitation that plaintiff was able to maintain concentration and attention for a "period of time." (Plaintiff's Motion at 6). Plaintiff argues that until the "period of time" statement by Dr. Simonian is clarified, the hypothetical question to the vocational expert is incomplete. (Plaintiff's Motion at 7).

A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant. Light, 119 F.3d at 793 (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)). Where, however, the record does not contain substantial evidence to support a limitation,

13

the ALJ need not include that limitation in his hypothetical questions to the vocational expert. See Magallanes, 881 F.2d at 756-57 (holding that an ALJ's hypothetical to the vocational expert is proper when it includes only those limitations supported by substantial evidence in the record).

Here, the first hypothetical question the ALJ posed to the vocational expert accounted for all of plaintiff's limitations for which substantial evidence existed. The ALJ's first hypothetical question was:

> [P]lease assume that you are dealing with an individual of the same age, education and work experience as [plaintiff]. Further assume this person retains the residual functional capacity for a limited range of light exertional work, specifically as follows. This person is able to lift 20 pounds occasionally, 10 pounds frequently. This person is able to stand and/or walk a total of six hours in an eight-hour day. This person is able to sit a total of six hours in an eight-hour day. This person is occasionally able to climb ramps and stairs, balance, stoop, crouch, kneel and squat. This person is not able to climb ladders, scaffolds and ropes or to crawl. Posturally [sic], in terms of the range of motion of the neck, I am going to phrase it as follows. This person has the following percentage of full range of motion. Flexion and extension, they're approximately the same, in other words, bending the head forward and bending the head backward approximately 60 percent of normal; rotation, meaning turning the head, not bending it, but turning the head to the left and to the right approximately 75 percent of normal. Manipulation, this person is able to frequently handle and frequently finger. Now, based upon those circumstances, could this person perform any of [plaintiff's] past work either as actually performed by [plaintiff] or as generally performed in the national economy?

(AR 237-38). Thereafter, the vocational expert testified that such a hypothetical individual could work as a cashier (cashier II - DOT code 211.462-010), DMV clerk (administrative clerk - DOT code 219.362-010), camp host (cashier II), and grocery cashier (cashier checker - DOT code 211.462-014).[14]  (AR 137, 238).

As explained above, Dr. Simonian's finding that plaintiff had the ability to "maintain concentration and attention for a period of time" was not a suggestion of a limitation. No clarification of the statement "period of time" was needed. The ALJ properly concluded that plaintiff's mental impairment was non-severe. Thus, the ALJ was not required to include any mental limitation in his hypothetical

---

[14]The titles within the parentheses are the DOT titles. (AR 137).

14

question to the vocational expert.  See Magallanes, 881 F.2d at 756-57.

Accordingly, the Court rejects plaintiff's claim that this hypothetical was fatally incomplete.

**D.     The ALJ Did Not Commit Reversible Error in Concluding that Plaintiff Was Capable of Performing Her Past Relevant Work**

Plaintiff argues that the ALJ improperly relied upon the vocational expert's testimony in concluding that plaintiff could perform her past relevant work. (Plaintiff's Motion at 7).  Specifically, plaintiff argues that the ALJ failed to provide specific findings regarding the physical and mental demands of plaintiff's past relevant work, as required by SSR 82-62, in determining whether she could return to her past relevant work. (Plaintiff's Motion at 8-9).  Plaintiff further alleges that the vocational expert testified that the hypothetical individual identified by the ALJ could not perform plaintiff's past relevant work. (Plaintiff's Motion at 7).

**1.     Pertinent Facts**

As noted above, the ALJ utilized the services of a vocational expert in this matter.  The vocational expert prepared a "Work Summary" of plaintiff's past relevant jobs, classifying them according to the DOT.[15]  (AR 137); see 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.").

At the hearing in this matter, the vocational expert adopted her Work Summary with minor modifications, and testified regarding plaintiff's past relevant work and the ability of hypothetical individuals with certain limitations to

---

[15] Although not reflected on the "Work Summary" itself, after hearing plaintiff's testimony, the vocational expert testified that plaintiff's prior work as a camp host should be classified as cashier II.  (AR 137, 234-36).  Plaintiff does not dispute the vocational expert's DOT classifications of plaintiff's past relevant jobs.

15

perform such work or other work in the regional and national economy. The ALJ posed three questions to the vocational expert regarding hypothetical individuals with different limitations (respectively "hypothetical individual no. 1," "hypothetical individual no. 2," and "hypothetical individual no. 3").

As detailed above, the first such hypothetical contained the limitations on which the ALJ later relied in finding plaintiff not disabled.[16] (AR 237). The ALJ asked the vocational expert whether hypothetical individual no. 1 could perform any of plaintiff's past work either as actually performed by plaintiff or as generally performed in the national economy. (AR 237-28). The vocational expert opined that hypothetical individual no. 1 could perform plaintiff's past work as a cashier (cashier II), DMV clerk (administrative clerk), camp host (cashier II), and grocery cashier (cashier checker). (AR 137, 238).

The second question posed by the ALJ to the vocational expert involved an individual with greater limitations.[17] The vocational expert opined that

---

[16]Specifically, hypothetical individual no. 1: (1) could lift twenty pounds occasionally, and ten pounds frequently; (2) could stand and/or walk a total of six hours in an eight-hour day; (3) could sit a total of six hours in an eight-hour day; (4) could occasionally climb ramps and stairs, balance, stoop, crouch, kneel and squat; (5) could not climb ladders, scaffolds and ropes or crawl; (6) posturally, in terms of range of motion of the neck, had the following percentage of full range of motion: (a) flexion and extension, i.e., bending the head forward and bending the head backward, approximately sixty percent of normal; and (b) rotation, meaning turning (not bending) the head from left to right approximately seventy-five percent of normal; and (7) could frequently handle and frequently finger. (AR 237-38).

[17]Specifically, hypothetical individual no. 2: (1) could lift twenty pounds occasionally, and ten pounds frequently; (2) could stand and/or walk a total of six hours in an eight-hour day; (3) could sit a maximum of one hour at a time, and a total of six hours in an eight-hour day; (4) could occasionally climb ramps and stairs, balance, stoop, crouch, kneel and squat; (5) could not climb ladders, scaffolds and ropes or crawl; (6) posturally, in terms of range of motion of the neck, had the following percentage of full range of motion: (a) flexion and extension, i.e., bending the head forward and bending the head backward, approximately sixty percent of normal; and (b) rotation, meaning turning (not bending) the head from left to right approximately seventy-five percent of normal; (7) as to manipulation, could frequently handle and frequently finger; (8) has limited push/pull capacity both in the arms and the legs; (9) should avoid even

(continued...)

hypothetical individual no. 2 could perform plaintiff's past work as a cashier (cashier II), DMV clerk (administrative clerk), and grocery cashier (cashier checker).

The third question posed by the ALJ to the vocational expert involved an individual with all of the limitations of hypothetical individual no. 2, with the modification that individual no. 3 could perform fingering on an occasional basis. (AR 241). The vocational expert opined that hypothetical individual no. 3 could not perform any of plaintiff's past relevant work. (AR 241). However, she further indicated that hypothetical individual no. 3 could perform other work in the regional or national economy – specifically, information clerk and charge account clerk.[18]

The vocational expert also stated that her testimony was consistent with the DOT. (AR 242).

The ALJ noted in his decision that he concurred with the vocational expert's testimony regarding the ability of hypothetical individual no. 1 – who had the residual functional capacity assessed by the ALJ for plaintiff – to work as a cashier, camp host and grocery cashier.[19]

### 2. Pertinent Law

The Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed. Pinto, 249 F.3d at 845. Although the claimant has the burden of

---

[17](...continued)
moderate exposure to vibration; (9) should avoid even moderate exposure to fumes, odors, dust, gases and chemicals; and (10) should avoid even moderate exposure to hazards, such as dangerous moving machinery and unprotected heights. (AR 238-39).

[18]The vocational expert indicated that the number of information clerk jobs would be 375 regionally, and 5,000 nationally, and that the number of charge account clerk jobs would be 500 regionally and 12,500 nationally. (AR 241).

[19]The ALJ mistakenly, but immaterially, included "preparation cook" among the past jobs that the vocational expert opined could be performed by hypothetical individual no. 1. (AR 14).

proving an inability to perform her past relevant work, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Id. at 844. "To determine whether a claimant has the residual capacity to perform [her] past relevant work, the [Administration] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact:

(1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to her past job or occupation. SSR 82-62; See Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988).

### 3. The ALJ's Failure to Make Specific Findings Regarding the Physical and Mental Demands of Plaintiff's Past Relevant Work Was Harmless

Plaintiff properly notes, and defendant has not disputed, that the ALJ erred in failing to make any findings of fact as to the physical and mental demands of plaintiff's past relevant work, as required by SSR 82-62. See Pinto, 249 F.3d at 844. The Court concludes, however, that his error was harmless and does not warrant a reversal of the ALJ's decision.

First, the ALJ expressly relied upon the testimony of the vocational expert in concluding that plaintiff could return to her past relevant work. (AR 14). A vocational expert's testimony constitutes substantial evidence upon which an ALJ may properly rely. See Magallanes, 881 F.2d at 756-57.

Second, the vocational expert's testimony itself is supported by substantial evidence as she expressly relied upon the DOT classifications in assessing whether the hypothetical individual in issue could perform plaintiff's past jobs. The DOT

provides the specific physical and mental demands of plaintiff's past jobs as generally performed. Notably, plaintiff does not contend that the vocational expert erred in classifying plaintiff's past relevant work according to the DOT (or the functional demands attributed to such work). Indeed, the work history report completed by plaintiff, as well as plaintiff's own testimony at the hearing support the vocational expert's DOT classifications.[20] (AR 87-94, 234-35). Furthermore, review of the DOT shows that plaintiff was capable of performing her past relevant work. For example, plaintiff's past work as a cashier and camp host (both of which were classified as cashier II) requires, in pertinent part, light exertional strength, frequent reaching, frequent handling, and frequent fingering. (AR 136, 137, 236). Plaintiff's residual functional capacity, as determined by the ALJ, was clearly consistent with the demands of a cashier II. (AR 14, 136).

For these reasons, the Court concludes that the ALJ's failure to provide specific findings of fact as to the physical and mental demands of plaintiff's past relevant work does not constitute reversible error.[21]

///
///
///
///

---

[20]For example, plaintiff's past work as a cashier and camp host were classified as cashier II (DOT code 211.462-010). (AR 137, 236). Cashier II requires, in pertinent part, light exertional strength, frequent reaching, frequent handling, and frequent fingering. (AR 136).

[21]The court notes that the vocational expert's testimony that hypothetical individual no. 3 could perform other work in the regional or national economy further supports a finding of harmless error. (AR 237-41). As noted above, although the vocational expert testified that hypothetical individual no. 3 could not perform plaintiff's past relevant work, the expert opined that the individual could perform other work in the regional or national economy such as that of an information clerk (DOT code 237.367-018) and a charge account clerk (DOT code 205.367-014). (AR 241). Thus, even if the ALJ both adopted a more limited residual functional capacity assessment for plaintiff and proceeded to step five of the sequential evaluation process, it is likely that plaintiff would nonetheless have been found not disabled. As the ALJ made no findings in this regard, the Court does not rely on the foregoing as a basis for its decision.

### 4. Plaintiff's Misreading of the Vocational Expert's Testimony Does Not Warrant Reversal

Plaintiff also argues that the ALJ improperly relied upon the vocational expert's testimony in concluding that plaintiff could perform her past relevant work. (Plaintiff's Motion at 7). Specifically, plaintiff alleges that the vocational expert testified that the hypothetical individual identified by the ALJ could not perform plaintiff's past relevant work. (Plaintiff's Motion at 7). Plaintiff erroneously argues that the vocational expert testified that the hypothetical individual, with the work restrictions identified by the ALJ, could not perform plaintiff's past relevant work. (AR 237-38). Plaintiff mistakenly references the vocational expert's response to the third hypothetical question. (AR 241). As noted above, the third hypothetical included additional limitations that the ALJ did not find to exist. (AR 14, 241). Indeed, as noted above, when the vocational expert was asked the first hypothetical question, which included all of the relevant limitations supported by substantial evidence, she testified that hypothetical individual no. 1 could perform plaintiff's past relevant work as a cashier (cashier II), DMV clerk (administrative clerk), camp host (cashier II), and grocery cashier (cashier checker). (AR 137, 237-38). Plaintiff's misreading of the vocational expert's testimony does not warrant reversal.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 19, 2007

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE